1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10

11   JERGENS, INC.,                        Case No.:  20-CV-2377-CAB-BLM
12                          Plaintiff,
                                           **ORDER ON MOTION TO DISMISS**
13   v.
14   5TH AXIS, INC. et al.,                [Doc. No. 16]
15                          Defendants.
16
17

18        This matter is before the Court on Defendants' motion to dismiss Counts VI and VII
19   in the complaint.  The motion has been fully briefed, and the Court deems it suitable for
20   submission without oral argument.  As discussed below, the motion is granted in part and
21   denied in part.

22   **I.    Allegations in Complaint**

23        Plaintiff Jergens, Inc., is an Ohio corporation that owns U.S. Patent Numbers
24   8,708,323 and 10,603,750 (the "'323 Patent" and "'750 Patent", respectively).   Both
25   patents concern the design of a class of workholding tools generally referred to as "pallets."
26   The specifications of the patents are not relevant to the instant motion, which concerns only
27   non-patent claims.
28

1

In early 2016, Jergens reached out to Defendant 5th Axis, a San Diego-based corporation that manufactures so-called "five axis" top tools but did not manufacture pallets. Jergens was interested in a potential collaboration wherein Jergens would manufacture pallets for 5th Axis, and 5th Axis would make five axis top tools for Jergens. According to the complaint, "[b]oth parties understood this to be the purpose of their proposed collaboration." [Doc. No. 1 at ¶ 38.]

On February 18, 2016, Defendant Christopher Taylor, who is the co-chief executive officer of 5th Axis according to the complaint, executed a non-disclosure agreement (the "NDA") with Jergens. [Doc. No. 1-4.] The NDA describes the information to be shared as "Jergens CAD drawings covering Fixture Pro® and other related products." [*Id.* at 2.] Relevant here, the NDA contains the following provision:

> This Agreement shall be subject to the Laws of the State of Ohio, for all purposes including, but not limited to, determining the validity of this Agreement, the meaning of its provisions, and the rights, obligations and remedies of the parties.

[*Id.* at 3, ¶ 6.] On August 10, 2016, Jergens and 5th Axis executed a Mutual Manufacturing Agreement ("MMA"), memorializing their agreement for Jergens to make pallets and 5th Axis to make five axis top tools. [Doc. No. 1 at ¶ 44; Doc. No. 1-5.]

On December 6, 2016, Jergens' representatives traveled to San Diego to meet with Defendants Taylor and Stephen Grangetto from 5th Axis. During this meeting, Jergens disclosed a new pallet design. [Doc. No. 1 at ¶¶ 49-53.] According to the complaint, this disclosure was made pursuant to the NDA, and the parties understood that the new design idea was confidential. [*Id.* at ¶¶ 54-55.] Jergens applied for what eventually became the '750 Patent on this new design on April 4, 2017, several months after this meeting with 5th Axis. [*Id.* at ¶ 56.] Jergens asked the Patent and Trademark Office ("PTO") not to publish the application publicly until it issued the patent. [*Id.* at ¶ 57.] The '750 Patent related to the new design issued on March 31, 2020. [*Id.* at ¶ 58.]

Meanwhile, according to the complaint, on June 8, 2017, 5th Axis separately applied for a patent on the same pallet design that Jergens allegedly disclosed at the December 6,

2016 meeting. [*Id.* at ¶ 61.] The Patent Office issued U.S. Patent No. 9,902,033 (the "'033 Patent") to 5th Axis on February 27, 2018—more than two years before the '750 Patent issued. [*Id.* at ¶ 62; Doc. No. 1-6.]

In mid-2017, 5th Axis began manufacturing and selling a pallet of its own that allegedly infringed the '323 Patent and the subsequently issued '750 Patent. [Doc. No. 1 at ¶¶ 64, 65.] In August 2017, Jergens sent 5th Axis a cease and desist letter. [*Id.* at ¶ 66.] The parties could not resolve their differences, however, leading to Jergens filing this lawsuit.

The complaint was filed on December 4, 2020. It asserts seven counts: (1) infringement of the '323 Patent; (2) infringement of the '750 Patent; (3) correction of inventorship of the '033 Patent; (4) breach of the NDA; (5) breach of the implied covenant of good faith and fair dealing with respect to the NDA; (6) violation of the Ohio Uniform Trade Secrets Act, Ohio Revised Code § 1333.61 *et seq.* ("OUTSA"); and (7) violation of California's unfair competition law, California Business and Professions Code § 17200 *et seq.* ("UCL"). Defendants move to dismiss the latter two claims.

## II. Legal Standard

The familiar standards on a motion to dismiss apply here. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

(9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## III.   Discussion

The instant motion is effectively two separate motions.  Defendants move to dismiss the OUTSA claim as time-barred under California's statute of limitations.  They move to dismiss the UCL claim because: (1) the parties' agreed that Ohio law would apply to their relationship; and (2) even if California law applies, the UCL claim is preempted.

### A. Ohio Uniform Trade Secret Act Claim

Defendants move to dismiss this claim on the grounds that it is barred by California's three-year statute of limitations.  Plaintiff opposes on the grounds that it is timely under a four-year statute of limitations that Plaintiff contends applies to OUTSA claims.  The parties make an array of arguments for why a three- or four-year statute of limitations applies, respectively.  These arguments require evaluation of the nebulous distinctions courts have made with respect to what constitutes "procedural law," what constitutes "substantive law," and what constitutes "conflict of laws" rules.[1]

As stated above, the NDA states that it "shall be subject to the Laws of the State of Ohio, for all purposes including, but not limited to, determining the validity of this Agreement, the meaning of its provisions, and the rights, obligations and remedies of the parties."  There does not appear to be any dispute here that because the OUTSA claim is

---

[1] Like many court opinions, both parties use "choice-of-law rules" as synonymous with "conflict of laws rules" in their briefs.  It would be clearer, at least in the context of the arguments made here, if "choice-of-law" was used when referring to a contractual provision stating what law governs the parties' relationship, and "conflict of laws" was used when referring to the principles and rules courts must use to determine which laws apply to litigants' claims when the parties each argue that different jurisdictions' laws apply and those jurisdictions' laws are materially different, i.e., the laws are in conflict.  This is the manner in which the Court uses these terms in this opinion.  A contractual "choice-of-law" provision is of course a significant factor in courts' "conflict of laws" analysis.

before this Court on diversity jurisdiction, the forum state's (i.e., California's) conflict of law rules apply. *See generally S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) ("In diversity cases, federal courts must apply the conflict-of-law principles of the forum state.")  Nor does there appear to be any dispute that the NDA's choice-of-law provision is valid and enforceable under California conflict of laws principles.  *See generally id.* ("[I]n the case of contracts with choice-of-law provisions, California will apply the substantive law designated by the contract unless the transaction falls into either of two exceptions: (1) the chosen state has no substantial relationship to the parties or the transaction, or (2) application of the law of the chosen state would be contrary to a fundamental policy of the state.").  Nor is there any dispute that in light of this choice-of-law provision, Ohio substantive law applies, and Plaintiff's trade secret claim was properly asserted under the OUTSA.  This is where the parties' agreements end.

Defendants first argue that Ohio law governs the interpretation of the choice-of-law provision, and that under Ohio's contract interpretation rules for contractual choice-of-law clauses, the parties did not agree to apply the Ohio's statute of limitations.  Therefore, according to Defendants, California's three-year statute of limitations should apply because the claim accrued in California.[2]  This dispute boils down to when California conflict of laws analysis stops, and application of Ohio law begins.  Defendants essentially argue that the conflict of laws analysis is over with the determination that Ohio law applies to the NDA, and that Ohio law must be used to interpret the choice-of-law clause to determine the parties' intent with respect to any choice of the applicable statute of

---

[2] Plaintiff argues that this claim accrued in Ohio as much as California, but the Court is not persuaded. This argument is seemingly incompatible with Plaintiff's assertion of the UCL claim under California law based on the same underlying allegations.  Moreover, the complaint contains no allegations of any conduct that occurred in Ohio.  Rather, Plaintiff reached out to Defendants in California.  Indeed, it is questionable whether there would even be personal jurisdiction over Defendants in Ohio, which is possibly why Plaintiff filed its lawsuit here in Defendants' home forum as opposed to Plaintiff's home forum of Ohio. Accordingly, for the purposes of this motion, the Court finds that the OUTSA claim accrued in California.

limitations.  Plaintiff argues that determination of the applicable statute of limitations is a conflict of laws question to be determined using California law.

Although both parties make compelling arguments, the Court is obligated to follow conflict of laws rules promulgated by California state courts.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."). California state courts have held that the determination of the applicable statute of limitations in the context of a contractual choice-of-law clause is a "conflict of laws" question to be determined under California conflict of laws rules.  Along these lines, California's intermediate appellate court held:

> California's conflict of laws principles treat the statute of limitations in the same manner as any other issue, and the courts of this state do not automatically apply California's statutes of limitations in every case. . . . [W]here a jurisdiction does not follow the traditional approach of applying its own statutes of limitations to all claims within its courts, a standard choice-of-law provision should be construed to incorporate the chosen state's statutes of limitations.

*Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*, 38 Cal. App. 4th 1532, 1543 (Cal. Ct. App. 1995) (internal citations omitted).  Applying California conflict of laws principles, the *Hambrecht* court held that a choice of law provision stating that an agreement would be "governed by and construed in accordance with the laws of the State of Delaware" incorporated Delaware's statute of limitations.  *Id*. at 1536.  Thus, although Defendants make a sound argument that the interpretation of the choice-of-law clause and whether the parties made any agreement as to the applicable statute of limitations relates to the "scope" of the clause and is therefore governed by Ohio law,[3] *Hambrecht* compels

---

[3] *See Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 469 n.7 (1992) (noting that "the question of whether [the Hong Kong choice-of-law] clause is ambiguous as to its scope . . . is a question of contract interpretation that in the normal course should be determined pursuant to Hong Kong law," but became one of California law because the parties did not request judicial notice of Hong Kong law or otherwise supply the relevant law); *see also id.* at 472 n.1 (Mosk, J, concurring) ("I agree with the majority that the scope of the choice-of-law clause in this contract is a question that would ordinarily be determined under

the Court to hold that pursuant to California's conflict of laws rules, Ohio's statute of limitations applies here.[4]

This does not end the inquiry, however, because the parties dispute what statute of limitations would apply under Ohio law. Plaintiff argues that the four-year statute of limitations in OUTSA itself applies. *See* Ohio Rev. Code Ann. § 1333.66 (West).[5] Defendants, meanwhile, argue that Ohio's borrowing statute applies and requires application of California's statute of limitations. Ohio's borrowing statute states:

> No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code Ann. § 2305.03 (West).

Defendants are partially correct. "[I]f a California court is bound, as here, by an enforceable contractual choice of law provision to apply a foreign state's law, including that state's statute of limitations, it must give equal effect to the foreign state's borrowing statute." *Hughes Elecs. Corp. v. Citibank Delaware*, 120 Cal. App. 4th 251, 261 (Cal. Ct. App. 2004). Thus, the Court must consider whether Ohio's borrowing statute requires

---

Hong Kong law. (Maj. opn., ante, at p. 469.) I further agree with the majority that, since the parties neither produced any evidence of Hong Kong law relating to this subject nor requested judicial notice of any such law, we may apply California law to ascertain the scope of the clause.").

[4] Like *Nedlloyd*, the *Hambrecht* opinion also notes that "[b]ecause the choice-of-law clause states that Delaware law is to govern the construction of the August agreement, questions concerning the scope of the clause would, in the normal course, be decided under Delaware law," and then declines to do so because the parties did not brief the issue under Delaware law. *Hambrecht*, 38 Cal. App. 4th at 1540 n.5. Yet, the opinion nevertheless resolves the issue of which state's statute of limitations applies pursuant to California's "conflict of laws principles."

[5] The provision reads: "An action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim." Ohio Rev. Code Ann. § 1333.66 (West).

application of California's three-year statute of limitations because the OUTSA claim accrued in California.

By its own terms, the borrowing statute applies only to actions "commenced and maintained" in Ohio. Referring to an earlier version of Ohio's borrowing statute, the United States Supreme Court noted that "[t]he purpose of the [] borrowing statute as those of other states, was apparently to require *its courts* to bar suits *against an Ohio resident* if the right to sue him had already expired in another state where the combination of circumstances giving rise to the right to sue had taken place." *Cope v. Anderson*, 331 U.S. 461, 466 (1947). More recently, an Ohio district court noted that "as to statutes of limitations, the rule in Ohio is that, if another state's substantive law applies to the underlying claim, then *Ohio courts* must use the shorter limitations period, as between Ohio's and that of the other state." *Rose v. Bersa*, No. 1:17-CV-252, 2020 WL 5210913, at *10 (S.D. Ohio Aug. 31, 2020) (*emphasis* added). Because the borrowing statute applies only to cases filed in Ohio courts, it does not apply to Plaintiff's OUTSA claim filed in this Court located in California.

Accordingly, because the four-year statute of limitations located within OUTSA itself applies, Defendants' motion to dismiss the OUTSA claim is denied.

### B. California Unfair Competition Law Claim

Defendants' primary argument for dismissal of the UCL claim is that the NDA's choice-of-law provision requires that Ohio law apply. "[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V.*, 3 Cal. 4th at 470. As for the UCL claim, the complaint "specifically" alleges the following purportedly unfair conduct as the premise of the UCL claim:

124. Specifically, despite entering into agreements with Jergens to preserve the confidentiality of Jergens's confidential and proprietary information and

to become Jergens's manufacturing partner, 5th Axis misused and misappropriated Jergens's intellectual property and used it to clandestinely file a patent application claiming that intellectual property as its own, and to secretly manufacture and then sell an infringing product that competes with Jergens, and thereafter threating [sic] to sue Jergens with the ill-gotten '033 Patent.

125.  Such conduct constitutes a violation of the unfair and unlawful prongs of the UCL.

[Doc. No. 1 at ¶¶ 124-25.]   These allegations indicate that Plaintiff contends that Defendants' alleged course of wrongful conduct was "unfair," at least in part, because Defendants engaged in such conduct despite entering into the NDA.   Because the unfairness of this conduct emanates from the breach of duties allegedly created by the NDA, Ohio law applies.   Based on the allegations in the complaint alone, therefore, the motion to dismiss is granted.

Plaintiff attempts to reframe the above allegation in its opposition, arguing that the UCL claim is premised on five distinct allegedly unfair or unlawful acts by Defendants: (1) "infringing on Jergens's '323 and '750 patents"; (2) "selling for a profit a pallet that infringes on Jergens's '323 Patent and '750 Patent"; (3) "filing a patent application for the . . . design it stole from Jergens"; (4) "threatening to falsely accuse Jergens of infringing on Defendant's '033 Patent"; and (5) "misusing the business partnership with Jergens to secretly develop and manufacture for sale a competing pallet using Jergens's opposing plunger design." [Doc. No. 19 at 28.]   Even if this argument is supported by the allegations in the complaint, the UCL claim would not survive dismissal.

The first two wrongful acts that Plaintiff argues entitle it to assert a California UCL claim appear indistinguishable from its claims for patent infringement.   "[T]he Patent Act preempts unfair competition claims that are not 'qualitatively different' from a federal patent infringement claim."   *Medina v. Microsoft Corp.*, No. C 14-0143 RS, 2014 WL 2194825, at *3 (N.D. Cal. May 23, 2014) (citing *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993)).   "Thus, to avoid preemption, the state law claim must require proof of an element not shared by the federal law."   *Deckers*

*Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *7 (C.D. Cal. May 8, 2015) (internal quotation marks and citation omitted). Plaintiff fails to explain how these alleged unlawful acts are qualitatively different from or require proof of an element not shared by a patent infringement claim. Indeed, Plaintiff effectively concedes that they are not different from patent infringement, arguing without supporting legal authority that "a cause of action for patent infringement under federal law . . . would give rise to a claim under the UCL." [Doc. No. 19 at 29.] Accordingly, to the extent the UCL claim is premised on "infringing on Jergens's '323 and '750 patents" or "selling for a profit a pallet that infringes on Jergens's '323 Patent and '750 Patent," it is preempted.

The third wrongful act—"filing a patent application for the . . . design it stole from Jergens"—also fails to state a California UCL claim. First, the alleged design theft necessarily stems from Defendants' use of information Plaintiff disclosed pursuant to the NDA because the complaint contains no other allegations of how Defendants would have obtained such information. Thus, the unfairness of this conduct emanates from duties created by the NDA, meaning Ohio law applies. Second, the alleged misconduct here occurred before the PTO. "Claims that are predicated on no more than bad-faith misconduct or fraud before the PTO . . . are preempted by federal patent law." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 319 (N.D. Cal. 2007). Accordingly, Plaintiff cannot maintain a California UCL claim on this ground either.

The fourth wrongful act—"threatening to falsely accuse Jergens of infringing on Defendant's '033 Patent"—is also preempted because "federal patent laws preempt state laws that impose tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). The complaint contains no allegations of bad faith. Moreover, any bad faith presumably would arise out of Defendants' alleged use information disclosed by Plaintiff pursuant to the NDA, meaning Ohio law applies.

The final wrongful act—"misusing the business partnership with Jergens to secretly develop and manufacture for sale a competing pallet using Jergens's opposing plunger design"—appears on its face to be premised at least in part on the NDA considering that the complaint alleges that Plaintiff disclosed the opposing plunger design to Defendants pursuant to the NDA, and that "the NDA carried with it an implied covenant that 5th Axis would not misuse confidential and proprietary information learned from Jergens." [Doc. No. 1 at ¶ 107.] Accordingly, Ohio law would apply to this conduct as well.

In sum, neither the allegations in the complaint nor the arguments in the opposition brief support Plaintiff's entitlement to assert a claim against Defendants under the UCL.

## IV.    Conclusion

In light of the foregoing, it is hereby **ORDERED** that the motion to dismiss is **GRANTED** as to Count VII for violation of California's UCL, and **DENIED** as to Count VI for violation of OUTSA.  Although the Court is skeptical that any amendment could cure the defects related to the UCL claim, because Plaintiff requests leave to amend and because leave to amend must be freely given, the dismissal of the UCL claim is without prejudice.  Plaintiff may file an amended complaint on or before **April 8, 2021**.

It is **SO ORDERED**.

Dated:  March 25, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge

20-CV-2377-CAB-BLM