UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERGENS, INC.,<br><br>                            Plaintiff,<br><br>v.<br><br>5TH AXIS, INC., CHRISTOPHER TAYLOR, STEPHEN GRANGETTO, and ADAM LANE,<br><br>                           Defendants. | Case No.: 20-cv-2377-CAB(BLM)<br><br>**ORDER DENYING DEFENDANT 5TH AXIS, INC.'S MOTION TO COMPEL**<br><br>**[ECF No. 43]** |

On June 4, 2021, Defendant 5th Axis, Inc. ("5th Axis") filed a motion to compel further responses to its Request for Production of Documents No. 57 and Interrogatory No. 4 and for monetary sanctions. [ECF No. 43 ("MTC")]. On June 11, 2021, Plaintiff Jergens, Inc. ("Plaintiff" or "Jergens") filed its opposition to 5th Axis' motion. [ECF No. 45 ("Oppo")]. On June 21, 2021, 5th Axis filed a reply to Plaintiff's opposition. [ECF No. 50 ("Reply")]. On June 23, 2021, with the Court's permission, Plaintiff filed a sur-reply. [ECF No. 51 ("Sur-reply")].

This discovery dispute focuses on a letter that Plaintiff received from its outside legal counsel and then provided to Defendants Christopher Taylor, Stephen Grangetto, and 5th Axis in August 2017. Specifically, attorney Gregory Vickers of Rankin, Hill & Clark LLP wrote a letter to Darel Taylor at Jergens on August 24, 2017 in which he stated that the 5th Axis Pallet infringed

1

Jergens' '323 patent ("Rankin Letter"). ECF No. 45-5, Declaration of Jack H. Schron Opposing Motion to Compel ("Schron Decl.") at 4, Exh. B. On or about August 29, 2017, Jergens' employees provided the letter to 5th Axis employees during a meeting in San Diego. Id. at 4. 5th Axis contends the Rankin Letter was privileged, the privilege was waived by Plaintiff upon delivery of the Rankin Letter to 5th Axis, and that the waiver extends to all post-disclosure communications between the Rankin Firm and Plaintiff regarding the same subject matter. MTC at 10-11, 17-24. Plaintiff disagrees and argues that the Rankin Letter was not privileged because it "was prepared for the purpose of presenting it to 5th Axis as formal notice of its infringement to initiate a settlement dialogue[]." Oppo at 6, 11-12. Plaintiff argues that even if it was privileged, the disclosure and subsequent use does not justify a broad subject matter waiver. Id. at 12-19. For the reasons set forth below, 5th Axis' motion is **DENIED**.

## DISCOVERY RELATED BACKGROUND

On April 2, 2021, 5th Axis served its First Set of Interrogatories on Plaintiff. ECF No. 43-1, Declaration of Robert M. Shore In Support of Motion to Compel ("Shore Decl.") at 2. On April 7, 2021, 5th Axis served its First Set of Requests for Production on Plaintiff. Id. Plaintiff objected to 5th Axis' Interrogatory No. 4 as unduly burdensome, overly broad, and protected by attorney-client privilege, or work-product doctrine. Id. at 84-85. Plaintiff objected to 5th Axis' Request for Production of Documents No. 57 "to the extent it seeks communications or other documents or information protected from disclosure by the attorney-client privilege, the work-product immunity doctrine, the common-interest privilege, the joint-defense privilege, [and] the joint lawyer doctrine." Id. at 134. Inferring that 5th Axis was seeking specific information in its Request for Production of Documents No. 57, Plaintiff advised 5th Axis it was open to a meet and confer on the matter. Id. Plaintiff did not provide a more substantive answer or produce any documents. On May 26, 2021, counsel for Plaintiff, Mr. Jean-Paul Ciardullo, Mr. Jai Singh, Ms. Tiffany Sung, and Ms. Ashley Koley, and counsel for 5th Axis, Mr. Robert M. Shore, and Mr. Laith Mosely, contacted the Court regarding this discovery dispute. ECF No. 40. The Court issued a briefing schedule and the parties timely filed their pleadings. Id.; see also MTC, Oppo.; Reply; Sur-reply.

# **LEGAL STANDARD**

The scope of discovery under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002); see also Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005) (same); U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C., 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

"The attorney-client privilege protects confidential communications between attorney and client, which are made for the purpose of giving legal advice." United States v. Sanmina Corp. & Subsidiaries, 968 F.3d 1107, 1116 (9th Cir. 2020); see also United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011). The Ninth Circuit has established an eight-part test for applicability of the attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure

by himself or by the legal adviser, (8) unless the protection is waived." Id.; see also United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009).

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (citing United States v. Reuhle, 583 F.3dd 600, 608 (9th Cir. 2009) (citation omitted). "One of the essential elements of the attorney-client privilege is the intent that the communication be kept confidential." SPS Techs., LLC v. Briles Aero., Inc., No. CV 18-9536 MWF (ASx), 2020 WL 3050777, at *4 (C.D. Cal. Feb. 18, 2020) (quoting Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995)). A client's perspective determines whether a communication is confidential within the meaning of attorney-client privilege, so long as the client's expectation of confidentiality is reasonable. SPS Tech., LLC, No. CV 18-9536 MWF (ASx), 2020 WL 3050777, at *4.

## **DISCUSSION**

The primary focus of this dispute is element four of the Ninth Circuit test: whether the Rankin Letter was issued in confidence. Plaintiff argues that the Rankin Letter was never intended to be confidential and was issued with the intention of delivering it to 5th Axis to facilitate settlement discussions, avoid litigation, and repair the companies' working relationship. Oppo. at 6-9. To support its position, Plaintiff provides a declaration signed under the penalty of perjury by its CEO and General Counsel, Jack H. Schron, Jr., who was involved in obtaining and distributing the Rankin Letter. Schron Decl. Mr. Schron declares that the Rankin Letter was not intended to be a privileged communication when it was created. Id. at 2. He explains that Jergens believed that 5th Axis had designed and manufactured the RockLock pallet based upon proprietary information Jergens had shared with 5th Axis during their previous working relationship. Id. at 2-3; see also Oppo. at 7. Mr. Schron asked Mr. Vickers "to conduct an infringement analysis of the RockLock with respect to [Jergens'] '323 patent." Schron Decl. at 3. "Subsequent to Mr. Vickers conducting his analysis, [Mr. Schron] arranged for Mr. Vickers to prepare a formal letter on his law firm's letterhead stating his assessment of the infringement for the sole purpose of presenting that letter to 5th Axis as part of a settlement dialogue to

reach a business solution resolution." Id. Mr. Schron explains that he thought the infringement opinion would have more credibility if it came from a patent lawyer, but he wanted it hand-delivered to 5th Axis by Jergens' employees as part of upcoming in-person discussions, so he directed Mr. Vickers to address the letter to Jergens. Id. The Rankin Letter is dated August 24, 2017 and signed by Mr. Vickers on his law firm's letterhead. Id., at Exh. B. Notably, the Letter is not stamped "confidential" or "privileged", does not contain the detailed analysis frequently seen in confidential infringement analyses, and merely concludes in essentially one paragraph that the 5th Axis product violates Jergens' patent. Id. In further support of Plaintiff's position, Mr. Schron provides the talking points that he drafted on August 25, 2017 for use in the upcoming meeting with 5th Axis. Id. at 3-4 and Exh. C. The talking points include statements that the Rankin Letter will be presented to 5th Axis and used to facilitate settlement via a licensing agreement. Id. Representatives from Jergens and 5th Axis met on August 29, 2017 and the talking points were emailed to 5th Axis on June 2, 2017. Id. at 4 and Exh. C.

5th Axis argues that the Rankin Letter was intended to be privileged because it was "from [Plaintiff's] counsel and addressed only to [Plaintiff]". MTC at 10, 14; Reply at 4, 11. 5th Axis further argues that Jergens' position that the Rankin Letter was not intended to be privileged when it was created is a new argument, concocted well after the fact to remedy the privilege waiver. MTC at 16; Reply at 5. To support its argument, 5th Axis provides handwritten notes created by one of Jergens' employees and notes the failures of Jergens to respond to a September 2017 letter from 5th Axis' counsel indicating that disclosure of the Rankin Letter waived the privilege and to raise the non-privileged issue during meet and confer efforts leading up to the instant motion. MTC at 6, 15; Reply at 9; Shore Decl." at 2, 5, Exhs. 2 and 3.

The handwritten notes, apparently dated in mid-August, 2017, were written by the former General Manager of Jergens' Tooling Division, and include an "Action" section that states (1) "patent infringement must be understood" "Darel/Vicker = need legal opinion", and (2) "strategy needs to be discussed based on patent [opinion]". Shore Decl. at 2; Sur-Reply at 4. Contrary to 5th Axis' argument, these notes do not indicate that the Rankin Letter was intended to be a privileged communication. These notes merely indicate that Jergens needs to obtain a legal

5

opinion regarding whether 5th Axis' product infringes Jergens' patent and to develop a strategy based on that legal opinion. In fact, as explained by Mr. Schron, Jergens obtained a legal opinion from Mr. Vickers regarding the infringement *and* a separate opinion, the Rankin Letter, to be given to 5th Axis and used during the business negotiations. Schron Decl. at 2-3. The notes have no bearing on whether the Rankin Letter constitutes the desired legal opinion or merely a document produced for business negotiations between companies.

On September 19, 2017, Mr. Shore, litigation counsel for 5th Axis, wrote Mr. Vickers regarding the infringement allegations asserted by Jergens. Shore Decl. at Exh. 2. The three-page letter initially states "We recognize that your firm does not appear to handle litigation and that you may have drafted your letter anticipating that it would remain privileged. Nevertheless, your client has waived privilege by voluntarily disclosing your letter to us." Id. at 1. The rest of the letter addresses the merits of the dispute, sets forth 5th Axis' settlement and litigation positions, asserts a preservation demand, and provides formal notice that the Mutual Manufacturing Agreement will be terminated in six months. Id. at 1-3. Mr. Vickers did not respond to this letter and in his next correspondence on September 10, 2018, did not mention the privilege or waiver issue. Shore Decl. at Exh. 3.

With regard to the meet and confer discussions, Mr. Shore declares that throughout the discussions, Jergens' counsel "did not represent that the Rankin Firm prepared the Rankin Letter for the purpose of providing it to 5th Axis or any other third parties" and argues that this supports 5th Axis' position. Shore Decl. at 5. Jergens' litigation counsel, Jean-Paul Ciardullo, responds that the original meet and confer discussions involved an exchange of relevant case authority and a broader discussion of privileged documents relating to two patents. ECF No. 45-1 Declaration of Jean-Paul Ciardullo ("Ciardullo Decl.") at 2. Mr. Ciardullo explains that at the time of the initial discussions, Jergens' litigation counsel had not fully understood the facts surrounding the Rankin Letter, the August 29, 2017 meeting, and the disclosure of the Rankin Letter. Id. Mr. Ciardullo states that shortly after the May 26th conference with the Court, "further investigation" confirmed the relevant facts, and he immediately wrote a formal letter to 5th Axis' counsel confirming Jergens' position. Id. at 2-3 and Exh. 2.

While Jergens' failures to rebut Mr. Shore's statement that the Rankin Letter was privileged and to assert in the beginning of the meet and confer efforts that the Rankin Letter was not privileged provide some support to 5th Axis' argument, an analysis of the circumstances surrounding the creation and distribution of the Rankin Letter do not support a finding that the Rankin Letter was intended to be protected by attorney-client privilege. The applicability of the attorney-client privilege requires that the communication be made in confidence, which focuses on the *client's intent* that the communication be kept confidential. SPS Tech., LLC, No. CV 18-9536 MWF (ASx), 2020 WL 3050777, at *4. Here, Plaintiff's intent is established by Mr. Schron's declaration and supporting talking points. The Court finds particularly persuasive the statement by Mr. Schron that the Rankin Letter was not intended to be confidential and was intended to be given to 5th Axis and the following supportive facts: 1) the talking points confirmed Mr. Schron's intent, 2) two infringement opinion documents were prepared by Mr. Vickers in essentially the same time period, 3) the Rankin Letter was not marked confidential and only contains a short conclusory statement of infringement, and 4) the Rankin Letter (and talking points) were provided to 5th Axis within days after their creation during an in-person meeting between representatives of the two companies. The failures noted by 5th Axis do not undermine this conclusion. The Court finds that Jergens has satisfied its burden of establishing that the Rankin Letter was not intended to be confidential and that, therefore, the attorney-client privilege never attached to the Rankin Letter. Defendant 5th Axis' motion to compel is **DENIED**.

## **SANCTIONS**

If a motion to compel discovery is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). See Brown v. Hain Celestial Group, Inc., 2013 WL 5800566, *5 (N.D. Cal. Oct. 28, 2013) ("[t]he party that loses the motion to compel bears the affirmative burden of demonstrating that its position was substantially justified") (internal citations omitted). "Discovery conduct is substantially justified if it is a

response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." Izzo v. Wal-Mart Stores, Inc., 2016 WL 409694, at *7 (D. Nev. Feb. 2, 2016) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

Defendant 5th Axis requests "this Court for an order imposing monetary sanctions in an amount presently estimated to be $5000.00 pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure and Civil Local Rule 83.1 against [Plaintiff] (but not its counsel) for the reasonable attorneys' fees incurred by 5th Axis in responding to [Plaintiff's] factually meritless argument that the [] Letter was never intended to be privileged." MTC at 6; see also Reply at 17-18. Because the Court denied the motion to compel, Defendant 5th Axis' motion for attorneys' fees is **DENIED**.

While Jergens does not specifically request attorneys' fees, it does assert that "5th Axis has it backwards about which party deserves sanctions." Oppo. at 16. Although Jergens is the prevailing party, the Court declines to award attorneys' fees because the dispute was "substantially justified."

**IT IS SO ORDERED**.

Dated: 7/16/2021

Hon. Barbara L. Major
United States Magistrate Judge